[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is an appeal by the property owner, Allen Haight (Haight) of the taking by the Commissioner of Transportation of the State of Connecticut (Commissioner) of a permanent easement and a temporary easement of portions of his property known as 1535, 1565 Railroad Avenue and 340 Cherry Street, Bridgeport, Connecticut. The certificate of taking was filed on May 12, 2000. The Commissioner assessed damages in the amount of $128,349.00 for the taking of both easements.
The subject takings are a part of a light industrial parcel bound on the south by the nonaccess portion of the south bound side of I-95 and on the north by the east bound side of Railroad Avenue which abuts the main line of the railroad connecting New York and points north. The general area has been devoted to industrial and heavy commercial activity for the last one hundred years or more. As a result of this activity over said period of time the general area containing the subject property has soil that is contaminated to various degrees. There is no evidence that the subject areas are contaminated with hazardous materials sufficient to cause the Department of Environmental Protection to call for remediation to date.
Pursuant to the provisions of General Statutes § 13a-76, the undersigned judge trial referee after proper notice to the interested parties heard testimony from the witnesses presented by Haight and the Commissioner. In addition the undersigned viewed the subject areas of taking and the general area surrounding these subject easements.
The intended use of the area covered by the permanent easement is to create a sloped embankment to create support for a relocated portion of the south bound lanes of I-95. The height of the embankment will be approximately forty feet above the present grade. At the present time the highway is elevated on piers and there is access by a twenty foot right of way underneath the highway to Cherry Street from the rear of the CT Page 14022 Haight property. The duration of the permanent easement appears to extend into the foreseeable future, and the value of any reversionary interest in the area of the permanent easement is found to have no present value. The Commissioner's appraiser, Mr Howard Benedict (Benedict), is of the opinion that the value of the reversionary interest is 10% of the fair market value. The court rejects that opinion as being unrealistic. The court is of the opinion that the Commissioner may label the taking as a permanent easement, but in fact the taking, in effect, is one that equates to a taking in fee simple. Thus the fair market value of the taking will be based on a total taking of Haight's interest in the permanent easement area.
Both the appraiser for Haight, Eric M. Glidden (Glidden) and the appraiser for the Commissioner, Benedict have prepared written appraisals based on comparative sales of similar industrial properties. The properties selected by both appraisers have a history of industrial contamination similar to that of the subject property. The Commissioner's claim that there should be an additional diminution in market value for contamination is rejected since in effect the Commissioner seeks a double discount. The appraisals have a range of values for the land area containing the permanent easement of $109,000 as a low and $162,000 as a high. It should be noted that the Benedict appraisals have taken a 10% reduction for the reversionary interest, which has been rejected above. In addition Benedict has not considered a small portion of the area of the permanent easement due to a misreading of the taking line.
Based on an examination of the appraisals in evidence, my view of the subject property and my own experience with land values, the court finds that the fair market value of the 37,287 sq. ft. permanent easement was $150,000.00 on the day of taking, May 12, 2000.
The next issue to be considered is the award to be made for the Commissioner's taking of a temporary easement in 16,153 sq. ft. of land contiguous to the permanent easement described above, for the purpose of maintaining for the duration of the so called "Blue Contract" a portion of a waste storage area (WSA).
The entire WSA consists of fourteen numbered bins with bins 11-14 on the subject temporary easement property. These bins temporarily store excavated material from the Blue Contract to determine what if any contaminates are part of the material. Each excavation sight is docketed and the material therefrom is placed in a numbered bin to keep track of the source of a bins contents. The material remains in its bin until a determination is made of the nature and degree of the contamination, if any, is established. Once the tests are completed, the material from that CT Page 14023 bin is sent to a reusable fill stockpile if acceptably low in contamination or sent to Waterbury to be processed if treatable or, if hazardous, then sent to Pennsylvania for disposal.
The bins have been very carefully constructed to assure there is no subsurface leakage and the contents are covered while awaiting analysis. The court did observe that there is some blowing dust generated during the process of loading or unloading the trucks bringing in or taking away the contents of the bins. The quantity of the dust was not significant. The WSA was well maintained as to neatness and dust control.
The duration of this temporary easement has not been defined in the certificate of taking. A managing engineer testified that the project's contract calls for the project to be completed by December, 2004. He further testified that as of August, 2002 the project was 134 days behind schedule. The court finds that given the vagaries of highway construction and the fact that at the time of the hearing there was already over one-third of a year delay, that it is reasonable to assume that the subject temporary easement will be in use for an additional year to December, 2005.
Haight has raised a claim of additional damage by the temporary easement area because of its use as a WSA for possible contaminated or hazardous materials. He claims that his entire parcel, not including the permanent easement will suffer a diminution in value because of a claimed stigma because of the contaminated materials that are being brought upon his land. The court cannot accept this claim for two reasons. As discussed above the WSA is well run and closely monitored to assure that contamination is kept to a trace, if at all. Haight has failed to prove that significant contamination is entering his property, so that there is only the question of whether there would be a subjective reaction by a potential buyer to the WSA activity that would significantly influence the buyer to discount his offer because of said activity. As mentioned above the Haight property and those about it have a hundred year history of environmental abuse to some degree. The court is not persuaded that a knowing buyer familiar with the history of the Haight property and those about it would factor in a further diminution in value due to the claimed stigma of the well run and protected WSA.
There still remains the question of what damages Haight has sustained as a result of his loss of use for a period of 6 years of the area comprising the temporary easement. Glidden in his written appraisal has proposed a valuation that is unrealistic and rejected by the court. Benedict opined in his testimony that the loss should be based upon the equivalent of the fair return on the value of the property covered by the CT Page 14024 temporary easement for the duration of the deprivation of use with some adjustment for present value of that portion that represents future payments.
It is the court's experience that those who invest in real estate seek a gross return of 12% on their investment.
Because the property is rear land and some adjustment must be made for present value, the court determines that a 10% return would be appropriate. The court has found above that the fair market value of the permanent easement is $4.00 per square foot (rounded). The temporary easement covers an area of 16,153.3 sq. ft. which would give a value to the area of $64,613.00. A 10% annual return on said value would be $6,461.30. Thus the value of the deprivation of use for the entire six year period is $38,768.00 present value.
The court has not determined the value of the loss of the twenty foot right of way to Cherry Street since that issue was not referred to the court. Upon proper referral that issue would be entertained by the undersigned.
The Commissioner requests in his brief that this court address the amendments to § 13a-76 contained in Public Act No. 01-75. There has been no evidence of "required remediation by the Department of Transportation" (emphasis added). Section 2 of the Public Act has been complied with by using properties similarly contaminated to find market value and thereby remediation costs have been implicitly entered into the determination of fair market value.
Pursuant to § 37-3c the court determines from a review of interest rates on short term treasury bills since May 12, 2000 that a reasonable rate of interest on the increase in assessed damages is 3.5% annually.
Pursuant to § 13a-76 the court awards Haight a reasonable appraisal fee of $5,000.00.
For the foregoing reasons judgment may enter for the defendant/appellant to recover from the plaintiff/appellee damages in the amount of $150,000.00 for the taking of the permanent easement plus $38,768.00 for the use of the temporary easement for a total of $188,768.00, less however, the amount of $128,349.00 already paid, leaving an excess of $60,419.00 for which judgment may enter, plus interest at the rate of 3.5% which the court finds fair, just and reasonable, from the date of taking to the date of payment of the judgment debt, plus a reasonable appraiser's fee of $5,000.00 and costs.
___________________ STODOLINK, J.T.R. CT Page 14025 [EDITORS' NOTE: This page is blank.] CT Page 14025-a